# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| | § CASE NUMBER 6:07-CR-00065-RC |
| v. | § |
| | § |
| | § |
| | § |
| RAYMOND TORRES, JR. | § |
| | § |

## AMENDED REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

On February 28, 2018, the Court conducted a hearing to consider the government's petition to revoke the supervised release of Defendant Raymond Torres, Jr. The government was represented by Ryan Locker, Assistant United States Attorney for the Eastern District of Texas, and Defendant was represented by Jason Cassel. At the hearing, the Court recommended that Defendant had violated the terms of his supervised release, that his supervised release be revoked and a sentence of imprisonment of 21 months with two years of supervised release to follow. This Report and Recommendation sets forth the Court's findings of fact and conclusions of law underlying the Court's recommendation announced from the bench on February 28, 2018.

## BACKGROUND

Defendant originally pled guilty to the offenses of Possession with Intent to Distribute Methamphetamine; and Carrying and Possession of a Firearm in the Furtherance of a Drug Trafficking Crime, both Class A felonies. The offenses carried a statutory maximum imprisonment term of life. The United States Sentencing Guideline range, based on a total offense level of 29 and a criminal history category of VI, was 151 to 188 months. On April 2,

2009, District Judge Michael H. Schneider of the Eastern District of Texas sentenced Defendant to 132 months imprisonment, followed by a term of 5 years of supervised release subject to the standard conditions of release, plus special conditions to include financial disclosure, substance abuse treatment and testing, and placement in a residential reentry center for a period of 120 days. On August 25, 2017, Defendant completed his period of imprisonment and began his term of supervised release.

      Under the terms of supervised release, Defendant was required to refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician. In its petition, the government alleges that Defendant violated this condition of supervised release by submitting a urine sample on November 4, 2017 positive for cocaine, methamphetamine, and marijuana. Defendant was also required to abstain from the consumption of alcohol while serving his term of supervised release. In its petition, the government also alleges that Defendant violated this condition of supervised release by submitting two positive breathalyzer tests which registered at 0.08 and 0.13 on January 20, 2018, and two positive breathalyzer tests which registered at 0.01 and 0.02 on January 22, 2018. In addition, Defendant was required to reside in a residential reentry center or similar facility, in a community corrections component, for a period of 120 days. While residing at the center, Defendant was to abide by the rules and regulations of the center, and pay subsistence according to the U.S. Bureau of Prisons' guidelines. In its petition, the government alleges that there was a notification of noncompliance received from County Rehabilitation Center ("CRC"), Tyler, Texas. The report advised that upon returning from work, Defendant submitted two positive breathalyzer readings of 0.08 and 0.13 on January 20, 2018. The positive readings were

consistent with alcohol usage. Defendant was unsuccessfully discharged from CRC on January 20, 2018, in violation of the conditions of supervised release.

## DISCUSSION

Based on 5th Circuit case law, the Court can find that illicit drug use constitutes possession. If the Court finds by a preponderance of the evidence that Defendant violated the conditions of supervised release by using, and thus possessing, cocaine, methamphetamine, or marijuana, he will be in violation of Texas Health and Safety Code § 481.115 and be guilty of committing a Grade B violation. Upon a finding of a Grade B violation, the Court shall revoke supervised release. U.S.S.G. § 7B1.3(a)(1). Considering Defendant's criminal history category of VI, the Guideline Imprisonment Range for a Grade B violation is 21 to 27 months. U.S.S.G. § 7B1.4(a). If the court finds by a preponderance of the evidence that Defendant violated conditions of supervision by consuming cocaine, methamphetamine, and marijuana on November 4, 2017; by consuming alcohol on January 20 and 22, 2018; and/or by unsuccessfully being discharged from CRC on January 20, 2018, Defendant will be guilty of committing a Grade C violation. U.S.S.G. § 7B1.3(a)(2) indicates that upon a finding of a Grade C violation, the Court may (a) revoke probation or supervised release; or (b) extend the term of probation or supervised release and/or modify the conditions of supervision. U.S.S.G. § 7B1.4(a) provides that in the case of revocation of supervised release based on a Grade C violation and a criminal history category of VI, the guideline imprisonment range is 8 to 14 months.

At the hearing, the Defendant denied the allegations that he possessed cocaine, methamphetamine, or marijuana. Defendant further denied that his breathalyzer results were accurate, or in some instances, that they were linked to any alcohol consumption. The government presented two witnesses in support of the allegations. First, Defendant's supervising

probation officer, Jason Stewart, testified. He has supervised Defendant since August 25, 2017. Mr. Stewart stated that Defendant tested positive for cocaine, methamphetamine, and marijuana on November 4, 2017. Mr. Stewart stated that Defendant made no admission prior to taking the test. After the results were shown to Defendant, he told Mr. Stewart that he was depressed after the death of his uncle and felt pressured to use drugs. He indicated he had voluntarily taken the drugs, which caused Mr. Stewart to conclude that Defendant possessed drugs leading to his positive drug test. Defendant made a written statement that while in West Texas, a family member had passed away and he was "devastated, depressed, [] emotional" and his mental state was fragile. He stated he "self-medicated" with methamphetamine, but understood he must stay drug free. He reiterated this same statement for cocaine and marijuana. Mr. Stewart then increased drug and alcohol tests to once a week and prepared a petition for the Court to modify Defendant's conditions of supervised release by placing Defendant in a community rehabilitation center. Defendant agreed to this modification, the Court ordered the modification and Defendant entered CRC on December 20, 2017. A condition of staying at CRC for Defendant was refraining from alcohol. Mr. Stewart testified that on January 22, 2018, Defendant saw him at the probation office in regards to Defendant's removal from CRC on January 20, 2018 due to consuming alcohol. Defendant submitted two positive breathalyzer tests with Mr. Stewart on January 22, 2018. When he took the tests, Defendant stated that he had taken NyQuil before he had gotten there. Because Defendant had indicated he took NyQuil, Mr. Stewart waited 15 minutes to test him again to allow his mouth to be cleared, and the test was positive a second time. On cross examination, Mr. Stewart discussed the fact that Defendant appeared surprised when he tested positive for cocaine and methamphetamine in November 2017.

Next, the government called Alfronzo Spurlock, who is the acting director at CRC. He stated that CRC prohibits alcohol usage. Mr. Spurlock stated that Defendant submitted two positive breathalyzer tests at CRC during one occasion on January 20, 2018. He stated when Defendant first blew for the test, CRC had him wait fifteen minutes to make sure the positive test was not a false positive caused by mouthwash, as was the standard, and Defendant blew again. It was also positive. That day, Defendant was removed from CRC for violating the rules.

Defendant presented evidence and called Rose Retana, to testify on his behalf. Ms. Retana was Defendant's supervisor at John Soules Food, Inc. and saw him on the days Defendant tested positive for alcohol. She indicated that their employer is very strict on people's movements and no food or drink is allowed while working. Ms. Retana testified that on the day Defendant failed to pass his breathalyzer tests at CRC on January 20, 2018, he had been at work in close proximity to her, and he did not appear to be under the influence of any alcohol. She spoke to him right before he left, and understood that he was leaving a little early and would call for a ride back to CRC right after work. She also saw him on January 22, 2018. She noted that he was supposed to be going to court that day and he clocked out early. On that morning, he had not smelled like alcohol. Ms. Retana testified that the only store around their work was a gas station that is 2–3 miles from their work.

Defendant also testified at the hearing. He stated that he had not been in possession of marijuana, methamphetamine, or cocaine, but that he had someone give him a "power hit" from a cigar ("yum yum"), where someone blew smoke into his face. Defendant stated that he knew the cigar contained marijuana, but he had no knowledge it contained methamphetamine or cocaine. Defendant denied the report about the breathalyzer tests at CRC and denied consuming alcohol on January 20, 2018. He stated that he understood the rules of CRC, and understood he

5

could not return to CRC without being tested for alcohol. He claimed that he was breathalyzed three times, not twice, and the CRC falsified this report in retaliation against him after he filed multiple grievances. He further argued that the breathalyzer's positive identification of alcohol while with his probation officer on January 22, 2018 was due to the NyQuil he was taking because of the flu.

### I.  Possession of a Controlled Substance

Based on all the evidence and as announced at the hearing the Court concludes that Defendant violated the conditions of his supervised release by possessing cocaine, methamphetamine, and marijuana as shown by a positive test for these substances. Defendant did not dispute the accuracy of the test nor did he dispute that he voluntarily ingested smoke from a cigar containing marijuana. Rather, Defendant claimed that he did not possess marijuana because the cigar was held by another person and he had no knowledge that the cigar contained cocaine or methamphetamine.

First, even if the Court believed Defendant's assertion that he did not hold the cigar when he ingested the smoke, this is a distinction without a difference.[1] By his own testimony, Defendant voluntarily ingested smoke from a cigar he knew contained marijuana. To accept Defendant's assertion would nonsensically eviscerate supervised release conditions prohibiting the possession of controlled substances. Second, as to Defendant's contention that he did not know the "yum yum" contained cocaine and marijuana, it is Defendant's responsibility to comply with the terms of his supervised release. Although he testified that he was unaware of the composition of a "yum yum"[2] he nevertheless voluntarily ingested smoke from the cigar fully knowing of the condition prohibiting the use or possession of controlled substances. Moreover,

---

[1] To be clear, the Court does not find this assertion credible.
[2] The Court likewise finds this assertion incredible.

Defendant did not inform his probation officer that he used marijuana until he had failed his urine test. When confronted with the positive test results, he did not inform the probation officer he was not in possession of the cigar or that he was unaware of the contents of the cigar. Instead he provided written statements that he "self-medicated" with all three drugs. And, as noted above, he admitted during the hearing he ingested marijuana. Based on Mr. Stewart's testimony and the written documentation, the Court finds that Defendant possessed cocaine, methamphetamine, and marijuana in violation of a standard condition of his supervised release.

## II.     Alcohol Consumption and CRC Violation

The Court also finds by a preponderance of the evidence that Defendant violated the rules of CRC when he tested positive for alcohol. The CRC director stated that Defendant submitted two positive breathalyzer tests on January 20, 2018 and that the second test was administered fifteen minutes after the first to make sure the first was not a false positive. The director's testimony referenced a written incident report prepared by CRC personnel on January 20, 2018. Although Defendant argues that this report was falsified to retaliate against him, there is no evidence other than Defendant's unsubstantiated assertion that CRC personnel would falsify a report to retaliate against Defendant. Moreover, the Court finds the written documentation substantiating these positive results and the testimony of the CRC director credible. Defendant elicited testimony at the hearing primarily from Ms. Retana that it would be very difficult to obtain alcohol after work on January 20, 2018. No matter how difficult it may have been, the Court's finding crediting the written test results and the Director's testimony outweighs this speculation. Accordingly, the Court concludes that Defendant violated a special condition of his supervised release by failing to comply with the rules of CRC.

The Court does not find by a preponderance that Defendant violated the conditions of release by consuming alcohol on January 22, 2018.

## **PUNISHMENT**

Because the Court found by a preponderance of the evidence that Defendant violated the conditions of his release by using, and thus possessing, cocaine, methamphetamine, and marijuana, Defendant has committed a Grade B violation, which requires to Court to revoke Defendant's supervised release.  The advisory guideline range for imprisonment for a Grade B violation is 21–27 months.  Because the Court found by a preponderance of the evidence that Defendant violated the conditions of his release by unsuccessfully being discharged from CRC on January 20, 2018, Defendant has committed a Grade C violation, which advises a punishment range of 8 to 14 months.  Because the Court finds a Grade B violation, it becomes the basis for determining the "grade of violation" for purposes of imposing a sentence.  *See U.S. v. Brown*, 590 Fed.Appx. 415, 415–16 (5th Cir. 2015).  The Court therefore recommends that Defendant's supervised release be revoked and looks at the advisory range of 21–27 months.

The government requested the Court to impose an upward departure from the 27 months, the high end of the punishment range set forth under the Guidelines.  In support of an upward departure, the government pointed to testimony from the CRC director stating that Defendant possessed alcohol during a previous stay at CRC in May 2017, which was in direct violation of the rules at CRC.[3]  In addition, the government relied upon testimony from Deputy U.S. Marshal Brandon Corbett that prior to his transport to the Court on the day of the hearing, Defendant had shaved and after he left the cell, the deputies discovered the blade was missing from his razor.  Defendant was initially asked if he had anything on him, and he said no.  He was then taken into

---

[3] He first thought this had happened after Defendant had been at work, but later reiterated it had been after a trip to Walmart.

the jail elevator and was specifically asked if he had a razor blade on his person. He stated he did have the razor and gave it to the deputies. He was not searched because he had admitted he had the razor blade. The government argued that these incidents show that an upward departure is warranted.

Defendant requested 21 months, the lower end of the Guideline range, and no supervised release after imprisonment. Defendant argued that incarceration is not in his best interest, and supervised release would only cause further transgressions. Defendant reiterated his need to change, and to move on from Tyler, Texas and move to West Texas where he would have better support from family and friends. Defendant argued that the razor was not a weapon. He had just taken it after he shaved and everyone at the jail did this. Defendant argued that it should not be considered.

Based on the findings set forth above and the evidence in the record, the Court recommends a term of imprisonment at the low end of the guideline range of 21 months with two years supervised release to follow. While the conduct the government points to in support of an upward departure is troubling, the Court finds that there are factors that counter the Government's request. First, the Court recognizes that Defendant served a lengthy term of imprisonment prior to his supervision commencing and that his positive drug test was initially dealt with by placement in CRC. Further, testimony at the hearing revealed that although Defendant has difficulty accepting responsibility and defusing conflict, he has to some extent a desire to succeed. Finally, Defendant has been successful to some extent in his employment at John Soules Foods. In weighing all of the evidence, the Court finds that 21 months imprisonment and a significant term of supervised release is adequate to address the conduct the government cites. More specifically, the term of supervised release will provide Defendant an

opportunity to demonstrate that he can successfully deal with expectations and conflict in a controlled environment.

## CONCLUSION

Pursuant to the Sentencing Reform Act of 1984, the Court **RECOMMENDS** that Defendant Raymond Torres, Jr.'s supervised release be revoked and that he be committed to the custody of the Bureau of Prisons for a term of imprisonment of 21 months with two years of supervised release to follow.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**So ORDERED and SIGNED this 9th day of March, 2018.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE